UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY A. KRUSE,

       Plaintiff,

v.                                      Case No. 1:08-CV-146

                                        Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on June 22, 1959 and has a Bachelor of Science degree in technical education (AR 80, 254).[1] He alleges a disability onset date of December 19, 2001 (AR 80). At the administrative hearing, plaintiff amended the disability onset date to December 19, 2002 (AR 252). Plaintiff had previous employment as a school laboratory director, a heavy equipment mechanic, and wood shop teacher (AR 101-09, 265-66, 286-88). Plaintiff identified his disabling conditions as cervical pain, low back pain, problems in the left hip and left knee, major depression and anxiety disorder (AR 127). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on March 21,

---

[1] Citations to the administrative record will be referenced as (AR "page #").

2007 (AR 15-22). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases.  *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

3

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff has not engaged in substantial gainful activity since his alleged onset date of December 19, 2001 (AR 17).[2] Second, the ALJ found that he had the following severe impairments: cervical spondylosis; depression; alcoholism in long term remission; and positive drug screen for cannabis (AR 17). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 18).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) "to perform light work with occasional stooping, kneeling, crouching, crawling and climbing ladders" (AR 18). Based on these limitations, the ALJ found that plaintiff could perform his past relevant work as a laboratory manager (AR 20). Rather than ending the evaluation at this point, the ALJ proceeded to Step Five of the sequential analysis, where he concluded that plaintiff could also perform the following jobs in the Grand Rapids area: cashier (6,000 jobs); housekeeper (6,000 jobs); mail clerk (5,000 jobs); account clerk (2,000 jobs); telephone clerk (4,000 jobs); and order clerk (1,300 jobs) (AR 21). The ALJ also stated:

> Even if I were to give the claimant the benefit of the doubt and add that the
> claimant needs a sit/stand position there are a significant number of jobs that the

---

[2] At the administrative hearing, the ALJ acknowledged the amended onset date of December 19, 2002 (AR 253, 276). Plaintiff takes issue with the ALJ's failure to include this amended disability onset date in his decision. *See, infra*.

4

>claimant could perform such as cashier (3000), mail clerk (2500), account clerk (1000), order clerk (650) and telephone clerk (4000).

(AR 21). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 21-22).

## III.   ANALYSIS

Plaintiff was represented by counsel throughout the administrative appeal. However, he filed this judicial appeal *pro se*. In support of his claim, plaintiff has submitted a rambling 19-page brief which is, at times, unintelligible. The brief did not include a "Statement of Errors" as required by the court's order directing filing of briefs. However, the body of plaintiff's brief referenced seven "errors" as follows. First, the ALJ failed to acknowledge the amended disability onset date of December 19, 2002. Second, the ALJ incorrectly found that plaintiff's last insured date was December 19, 2006. Third, the ALJ erred by failing to give the opinion of a treating physician controlling weight. Fourth, the ALJ "denied Plaintiff the protected right for allowing the submission of factual pertinent evidence supporting claim, ultimately ensuring full development of the record" and failed to act as an impartial and unbiased judge. Fifth, the ALJ improperly found that plaintiff was not credible. Sixth, the ALJ misinterpreted an x-ray. Seventh, the ALJ did not properly evaluate plaintiff's drug addiction and alcoholism, providing no support for the opinion that his "problem appears to be alcohol."[3]

---

[3] Plaintiff's brief also included a number of additional "contentions," stating that the ALJ's decision: (a) failed to properly evaluate his claim under the rules, regulations and guidelines governing the Social Security Administration; (b) is not supported by substantial evidence of record; (c) did not introduce evidence sufficient to sustain his burden of proving that plaintiff could perform the exertional requirements of sedentary work; (d) incorrectly evaluated his credibility; (e) inaccurately evaluated his claim under the medical-vocational guidelines; (f) inconsistently evaluated medical expert/advisor opinion evidence; (g) contains abuses of discretion; (h) appears biased; (i) is prejudiced on the merits; (j) deprived him of substantial due process amendment rights; and (k) failed to provide sufficient justification for denial based upon the applicable legal standards. Plaintiff's Brief at 19-20. Plaintiff does not provide argument in support

5

### A.     Amended onset date and last insured date (Issues 1 and 2)

As an initial matter, the ALJ's decision refers both to plaintiff's original onset date of December 19, 2001 and to his amended onset date of December 19, 2002 (AR 15, 17). In the "Jurisdiction and Procedural History," the ALJ notes that plaintiff's counsel "amended the onset date to December 19, 2002" (AR 15). However, in the "Findings of Fact and Conclusions of Law," the ALJ adopted the earlier alleged onset date of December 19, 2001 (AR 17). The ALJ also found that plaintiff acquired sufficient quarters of coverage to remain insured through December 31, 2006 and, as result, he "must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits" (AR 15). By utilizing this framework, the ALJ limited his review of the record from December 19, 2001 through December 31, 2006. Plaintiff contends that he amended his disability onset date to December 19, 2002 and contests the last insured date of December 31, 2006. Defendant's brief does not address these issues.

Plaintiff's eligibility for DIB is determined by the last date that he was insured for such benefits. Plaintiff's insured status ceased in the last quarter in which he had twenty quarters of contribution into the Social Security system within a forty-quarter period. *See* 42 U.S.C. §§ 416(i), 423(c)(1)(B)(i); 20 C.F.R. § 404.130(b). *See, e.g., Schacht v. Barnhart*, 2004 WL 2915310 at * 7, fn. 1 (D. Conn. Dec. 17, 2004) ("The Commissioner determines eligibility for DIB by counting the number of quarters per year a person works during a specific time period prior to the onset of the disability. Specifically, in order to be eligible for DIB the claimant must have twenty

---

of these conclusory claims. Accordingly, the court deems them waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones").

quarters of coverage in the forty-quarter period extending to the quarter in which the disability is alleged to have begun. *See* 20 C.F.R. § 404.130(b).").

Plaintiff earned over $7,000.00 in 2003 and appears to have received four quarters of DIB coverage in that year (AR 68). The ALJ did not address this work history, which occurred after either of the alleged disability onset dates. Establishing plaintiff's alleged disability onset date, last insured date and work history are fundamental to determining whether plaintiff is entitled to DIB. Here, the ALJ mentioned two possible dates for the alleged onset of disability and failed to evaluate all of plaintiff's work history in determining the last insured date. The ALJ's decision is incomplete and internally inconsistent. Accordingly, this matter should be reversed and remanded to the Commissioner to establish plaintiff's alleged disability onset date and his last insured date. *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning").

### B.     The ALJ's evaluation of Dr. Jowar's opinion (Issue 3)

Plaintiff's argument with respect to Katherine Jowar, D.O., a psychiatrist, is difficult to follow. He apparently contends that the ALJ failed to give controlling weight to Dr. Jawor's opinions, but fails to identify any such opinion. The record reflects that Dr. Jawor and physicians from Community Mental Health Services of Muskegon County ("CMHS") treated plaintiff in 2004 and 2005 (AR 178-92, 211-33). The ALJ did not discuss Dr. Jawor's opinions in detail, but relied upon the testimony of two medical experts who reviewed plaintiff's medical records, Dr. Laura Rosch, a board certified internist and Dr. Kathleen O'Brien, a licensed clinical psychologist (AR 19-20, 274-75, 280-81). After Dr. O'Brien reviewed plaintiff's medical records, she concluded that he had no limitations due to depression (AR 281-86). The ALJ could properly rely on Dr. O'Brien's

7

opinion to support his decision. *See* 20 C.F.R. §§ 404.1527(f)(2)(iii); 416.927(f)(2)(iii) (ALJ has discretion to "ask for an consider opinions from medical experts" on the nature and severity of a claimant's impairments). *See Davis v. Chater*, No. 95-2235, 1996 WL 732298 at *2 (6th cir. Dec. 19, 1996) (testimony of a medical advisor is substantial evidence sufficient to support the ALJ's decision); *Atterberry v. Secretary of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989) (the opinion of the Secretary's medical advisor constitutes substantial evidence when the opinion is detailed and consistent with other medical evidence in the record). Accordingly, plaintiff has failed to identify any error by the ALJ with respect to the evaluation of a treating physician's opinion.

### C. ALJ's evaluation of Dr. O'Brien's testimony (Issue 7)

Next, plaintiff contends that the ALJ allowed Dr. O'Brien to "unjustifiably extrapolate" conclusions from the evidence. Specifically, plaintiff states that Dr. O'Brien improperly testified that plaintiff "[c]annot be without alcohol for a short period of time." Plaintiff's Brief at 6.

Dr. O'Brien noted inconsistency in the records regarding plaintiff's use of alcohol and testified that plaintiff's medical providers "go back and forth about giving him a diagnosis of alcohol [dependence]" during 2004 and 2005 (AR 281). Plaintiff's physicians diagnosed him as suffering from alcohol dependence through at least November 2005 (AR 281-82). Dr. O'Brien defined a diagnosis of "alcohol dependence" as "only applicable to someone who is physiologically addicted in a way in which, if they were to stop using the substance, they would have withdrawal symptoms" (AR 282). The doctor explained that if a person was in remission, the diagnosis would be "alcohol abuse in remission" rather than "alcohol dependence" (AR 282). Dr. O'Brien testified that some of the records indicated that plaintiff was in "early remission," meaning that plaintiff had

gone "perhaps a few months at most where he was being diagnosed as having been actively on alcohol dependence [sic]" (AR 282). Because the medical records fluctuated between diagnoses of "early remission" and "alcohol dependent," Dr. O'Brien opined that plaintiff's medical treaters concluded "that alcohol is likely to still have been a problem" (AR 282).

In addition, the medical records indicated "some exaggeration of symptomatology" and that plaintiff's depression was "situational in the sense that it seemed to increase when he would get a rejection from SSI or whatever he was applying for at the time" (AR 282-83). At times, plaintiff refused medication stating that he only wanted counseling, but there is no record that he participated in counseling (AR 283). The medical records indicate that plaintiff was not compliant with treatment, by refusing medication, refusing counseling, and taking only partial dosages of medication (AR 283). Plaintiff was treated by a psychiatrist, but there is no evidence that he was considered a danger to himself or hospitalized (AR 283). Dr. O'Brien concluded that "while [plaintiff] suffers from a situational depression it doesn't rise to the level that would meet the (INAUDIBLE) criteria of the 12.04 listing" (AR 283-84).

Furthermore, Dr. O'Brien pointed out that while plaintiff claimed to have ceased using alcohol in 1999, he reported to a doctor in September 2005 that he last used alcohol in 2002 (AR 281).

When asked if plaintiff's condition would impact his ability work, Dr. O'Brien provided the following response:

> A person that's alcohol dependent, yes, would have great difficulty holding down a job because if he [sic] to be without alcohol more than a very short period of time, sometimes only a matter of hours [sic].

(AR 284).

9

Dr. O'Brien's conclusions are consistent with the medical record. On July 16, 2004, Dr. Jawor examined plaintiff and diagnosed him with major depression, a generalized anxiety disorder, and a history of alcohol abuse in remission (AR 185). Plaintiff reported his last use of alcohol as March 19, 1999 (AR 184). In August through November, 2004, Dr. Jawor diagnosed plaintiff at various times with: major depression, recurrent, severe; generalized anxiety disorder; and history of alcohol dependency in remission (AR 211-20).

In February, March, May, June, September psychiatrists at CMHS found that plaintiff had recurrent major depression and alcohol dependency, in early remission (AR 229-33). In November and December 2005, another psychiatrist at CMHS, Zia Khan, M.D., found plaintiff to suffer from a major depressive disorder, recurrent and moderate alcohol dependence (AR 224, 226). In November 2005, Dr. Khan noted that plaintiff's depression was "more situational than anything else" (AR 226). In addition, plaintiff stated that he was not taking any medication because could not afford the $5.00 co-pay (AR 226). Dr. Khan noted that CMHS was providing plaintiff with financing for his medication, "but he has not bothered to check with us and now states that his mood is getting depressed" (AR 226). In December 2005, the doctor noted that plaintiff had a history of not taking his prescribed anti-depressants due to side effects (i.e., Remeron, Cymbalta, Paxil, and Neurontin) (AR 224). Dr. Khan noted that plaintiff "did not give any of these medications a significant amount of time" and told plaintiff that "his body will eventually adjust [to the medications] if he continues to persist" (AR 224). Plaintiff was discharged from CMHS on March 21, 2006, for failing to return, keep appointments and contact CMHS (AR 222). His final diagnosis was major depressive disorder and moderate alcohol dependence (AR 222).

A non-examining DDS psychiatrist, Robert L. Newhouse, M.D., reviewed the records and found that plaintiff had the following mental residual functional capacity in September 2004:

> Alcoholism was a problem for years has been dry for five years [sic].  Primary limitation of ADL is physical in nature.  He has become more irritable and tends to isolate.  He is negative, may be uncomfortable in large groups and function[s] best in small familiar groups.  He is distracted by his pain and may have difficulty with concentration may have trouble with complex detailed tasks.  Retains ability to do simple tasks on a sustained basis.

(AR 197).

Accordingly, plaintiff's claim that Dr. O'Brien drew improper conclusions from the medical record are without merit.

### D.    The ALJ failed to develop the medical record and was biased (Issue 4)

#### 1.    Failure to develop the medical record

Plaintiff contends that the ALJ did not properly develop the record for his benefit. Plaintiff's contention is without merit.  The ALJ has a "special duty" to develop the administrative record and ensure a fair hearing for claimants that are unrepresented by counsel.  *See Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (ALJ must scrupulously and conscientiously explore all the relevant facts when adjudicating claims brought by unrepresented claimant).  However,  the ALJ has no such special duty when a claimant is represented by counsel. *See  Trandafir v. Commissioner of Social Security*, 58 Fed. Appx. 113, 115 (6th Cir. 2003) (ALJ does not have a  "special, heightened duty to develop the record" when the claimant is represented by counsel); *Luteyn v. Commissioner of Social Security*, 528 F.Supp.2d 739, 752 (W.D.Mich. 2007) ("[t]he ALJ's special duty to pro se parties to develop the record does not extend to plaintiff, because plaintiff had legal representation at the hearing").  Here, the ALJ did not have a special, heightened

duty to develop the record because plaintiff was represented by counsel at the administrative hearing.

### 2. ALJ was biased

Next, plaintiff contends that the ALJ was biased. Hearing officers are presumed to be unbiased. *Schweiker v. McClure*, 456 U.S. 188, 195 (1981). A party can rebut this presumption by a showing of conflict of interest or other specific reason for disqualification, but the burden of establishing a disqualifying interest is upon the person making the contention. *Id. See Davis v. Chater*, No. 95-2235, 1996 WL 732298 at * 4 (6th Cir. Dec. 19, 1996); *NLRB v. Ohio New & Rebuilt Parts, Inc.*, 760 F.2d 1443, 1451 (6th Cir. 1985). Plaintiff claims that the ALJ was biased because he took "a passive role" in the proceedings and left it to the plaintiff "to develop the relevant facts." Plaintiff's Brief at 5. This is hardly a definition of bias. As previously discussed, the ALJ did not have a heightened duty to develop the record. Plaintiff's vague arguments fail to rebut the presumption that the ALJ was unbiased.

### E. The ALJ misinterpreted an x-ray result from May 1, 2003 (Issue 6)

Next, plaintiff contends that the ALJ misquoted the other medical expert, Dr. Rosch, regarding plaintiff's physical impairments. Plaintiff argues that an "alleged normal x-ray" from May 1, 2003 is not consistent with all of the medical evidence and that the validity of the x-ray is "suspect." Plaintiff's Brief at 8. This x-ray involved plaintiff's cervical spine (AR 176). By way of background, the ALJ found that plaintiff's alleged back and knee pain were not severe, based in part on Dr. Rosch's testimony regarding a normal x-ray of these areas (AR 17). Dr. Rosch did not specifically refer to the May 2003 x-ray, but testified that based upon the objective medical

evidence, plaintiff's neck was the major problem and that his condition could cause headaches (AR 278-79).

The May 2003 x-ray arose from a medical examination of plaintiff by Paul McTurk, D.O., a physician at MGH Family Health Center (AR 168). Plaintiff complained to the doctor of back pain, right shoulder problems, right-sided elbow ache, forearm/hand numbness, left hip and knee pain, and requested "a complete physical exam" (AR 168). The May 2003 x-ray results were as follows:

> **XR C-SPINE 4+ VIEWS**
> The vertebrae are in normal alignment. The disc spaces are well maintained. No fracture, dislocation, or osseous abnormality is seen.
>
> **IMPRESSION**
> Negative cervical spine.

(AR 176).

The ALJ's decision noted that the May 2003 x-ray "showed negative cervical thoracic and lumbar spine [sic]" (AR 19). Yet, the ALJ also noted that an x-ray from October 21, 2003, indicated that plaintiff had moderate spondylosis at C3-4 and C4-5 with foraminal narrowing (AR 19, 162).

Plaintiff contends that the May 2003 x-ray report was not normal, because it was inconsistent with an earlier cervical x-ray from April 1997, which found "[d]egenerative changes C3 through C5" (AR 141). Specifically,

> There is evidence of degenerative change with narrowing of the posterior C3-4-5 disc spaces with early end-plate lipping posteriorly, which produces early foraminal impingement at the C4-5 levels. Remaining interspaces, all segments and associated elements are well developed and preserved.

(AR 141). Plaintiff also points to an MRI from July 12, 2004, which also indicated problems at C4-5:

> The sagittal sequences show mild disc space narrowing posteriorly at C3-4, C4-5 and C5-6. There is minimal effacement of the anterior aspect of the sac at these levels. There is normal signal in the underlying cord.
>
> The axial images show the C3-4 disk is intact with patent neural foramina and no spinal stenosis. There is a tiny central disk bulge at C4-5 with patent neural foramina and no spinal stenosis. At C5-6, the disk appears intact with patent neural foramina and no spinal stenosis. The C6-7 and C7-T1 levels are unremarkable.

(AR 164). Based upon this MRI, the radiologist concluded that plaintiff had "[m]inimal spondylosis C3-4, C4-5, and C5-6" (AR 164).

As an initial matter, there is no evidence that the May 2003 x-ray was "suspect" or prepared by a radiologist biased against plaintiff.[4] Nevertheless, the ALJ did not adequately explain the discrepancies between the cervical x-rays taken in April 1997, May 2003, October 2003 and the cervical MRI taken in July 2004. While the ALJ apparently relied on the "negative" cervical spine x-ray taken in May 2003, he failed to reconcile this finding with studies taken both before and after May 2003 which indicated cervical problems. Accordingly, this matter should be reversed and remanded for a re-evaluation of the x-rays and MRI.

### F. The ALJ improperly evaluated plaintiff's credibility (Issue 5)

Plaintiff contends that the ALJ improperly evaluated his credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records,

---

[4] Plaintiff argues that the May 2003 x-ray was ordered by a "one shot" examining physician at MGH, whom plaintiff identifies as "Mcturk, not caucasian." Plaintiff's Brief at 8. Plaintiff states that "Mcturk accused 'Plaintiff of coming to Muskegon from Wisconsin to easily obtain pain pills and disability benefits.'" *Id.* Plaintiff further states that the "[a]lleged normal C-spine is read by Coworker of biased McTurk." *Id.* at 8-9.

claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (an ALJ's credibility determinations are accorded deference and not lightly discarded).

The ALJ made the following credibility determination:

> After considering the evidence of record, I do not find the claimant credible. As pointed out by Dr. O'Brien, the claimant has been inconsistent in his statements concerning his drinking and exaggerating his symptomatology. I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. Claimant's problem appears to be alcohol. In addition claimant had a positive drug test on April 30, 2003.

(AR 20) (citation omitted).

The record indicates that plaintiff has given inconsistent statements regarding his alcohol and drug use. When plaintiff visited MGH in May 2003 complaining of back pain, he denied alcohol and drug use (AR 168-71). However, his drug screen was positive for cannabis (AR 172). In addition, in September 2005, plaintiff reported to CMHS psychiatrist Edwin H. Kroon, M.D., that he has been abstinent from alcohol for three years (AR 227). As Dr. O'Brien observed, this was inconsistent with plaintiff's statements that he has been abstinent since 1999 (AR 281). Contradictions exist between the medical records, claimant's testimony and other evidence. *Walters*, 127 F.3d at 531. Accordingly, the ALJ could properly discount plaintiff's credibility.

However, it is unclear to the court whether the ALJ used the appropriate standard to evaluate the effect of plaintiff's alcoholism on his ability to work. Under the applicable federal law, 42 U.S.C. § 423(d)(2)(C), drug addiction or alcoholism cannot be a material factor to a disability

15

finding. *Bartley v. Barnhart*, 117 Fed. Appx. 993, 998 (6th Cir. 2004). In accordance with this restriction, an ALJ should look to periods of sobriety in the record to determine whether a claimant suffers from a work-limiting mental illness independent of substance abuse. *Id.* While the ALJ noted plaintiff's drug use and identified plaintiff's problem as alcohol, the decision did not address whether plaintiff suffered from disabling conditions independent of this substance abuse. Accordingly, this matter should be reversed and remanded to determine whether plaintiff suffered from a disabling condition independent of substance abuse.

### IV.     Plaintiff's motion for default judgment (docket no. 21)

Finally, plaintiff has filed a motion for default judgment. Plaintiff's motion is frivolous. Entry of a default under Fed. R. Civ. P. 55(a) is a prerequisite to obtaining a default judgment under Fed. R. Civ. P. 55(b). *See Ramada Franchise Systems, Inc. v. Baroda Enterprises, LLC*, 220 F.R.D. 303, 305 (N.D. Ohio 2004). Plaintiff has not obtained an entry of default against defendant. On the contrary, defendant filed an answer and brief sufficient to adjudicate plaintiff's Social Security appeal. Accordingly, plaintiff's motion for default judgment (docket no. 21) should be denied.

### V.     Recommendation

For these reasons, I respectfully recommend that plaintiff's motion for default judgment (docket no. 21) be **denied** and that the Commissioner's decision be **reversed and remanded** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should (1) establish plaintiff's alleged disability onset date and his last insured date; (2) re-evaluate the x-

rays and MRI; and (3) determine whether plaintiff suffered from disabling conditions independent of substance abuse.

Dated:  November 18, 2008                    /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).